PEOPLE *ex rel.* TRAFFORD *v.* TRAFFORD.

(*Supreme Court, Special Term, Erie County.*   November 3, 1890.)

PARENT AND CHILD—CUSTODY OF CHILD.
    A husband and wife had separated, after altercations caused by the irregular habits of the father and the temper of the mother, who was carrying on a boarding-house.  Soon after the separation, the mother sent a five-year-old daughter to the father's parents, herself retaining the custody of their other daughter until the death of the latter as the result of an illness for which the mother caused her to be treated by a "Christian scientist" instead of a physician, using no remedies but silent prayer.  The father refused to allow the surviving child to go to the mother's house, and the mother forcibly took her.  The mother and her relations were without means other than what was obtained by daily labor.  The paternal grandparents were of excellent character, had a strong love for the child, were willing to give her a pleasant home, and had ample means to give her every educational advantage.  She would probably inherit their property, being their only grandchild, and her father being their only child.  *Held*, that the welfare of the child was the controlling consideration, and her custody should be awarded to the grandparents.

*Habeas corpus* on the relation of Thomas H. Trafford against his wife, Elizabeth Trafford, to obtain possession of their daughter Lucy, of the age of five years.

*Patrick F. King*, for relator.  *Edward C. Hart*, for respondent.

LEWIS, J.   The decision of this question is one resting largely in my discretion, but in exercising such discretion I must be guided by the well-settled rules of law governing the decision of such questions.   The child is too young to have any intelligent choice in the matter.   In determining to whom her custody should be awarded, her present and future interests and good must be the controlling question.   The welfare of the child is the object to be secured.   Where will her health, education, and morals be best cared for? Her expectations as to property, though of minor importance, should be given their proper weight.   Formerly the husband was supposed to exercise supervision over his wife, and her position and influence in the family were inferior to that of the husband, and when questions like this arose, as a rule, the preference was given the husband; but in modern times, wives having assumed their proper position in the management of the children and household, at least equality with her husband in their management should be awarded her.   Neither of them, however, has any rights, touching the custody of the children, which can be allowed to militate against the welfare of

the child.  Its custody may be awarded to either parent, or they may both be refused its custody, and its custody be awarded to some other person.   Were the alternative presented to me of awarding this child to either the father or mother, considering its age and sex, and the parties, I should give it to the mother.

A brief recital of the facts is proper to explain the reasons which have led my mind to the conclusion that the best interests of the child will be promoted by awarding its custody to its grandparents, Henry and Frances A. Trafford. The parties to this proceeding reside in Lockport.   They were married some 10 or 12 years since, and there have been born to them two children, both girls.   One died a few months since.   The subject of this controversy is a girl five years old, in good health.   Mr. and Mrs. Trafford, in the early part of their married life, lived happily, but of late years there have been occasional altercations and trouble in the family; the primary cause being the irregular, intemperate habits of the relator.   Their conflicts have been incited and stimulated in a measure by the irascible temper of the respondent. The relator, until the time that his wife left him, provided fairly well for all their physical wants, but in other respects he neglected his family, absenting himself nights, and otherwise abusing his wife.   They continued living together in a dwelling-house belonging to and near the relator's father's home until last fall, when Mrs. Trafford, without notice or warning, left her home with her two children, and has since lived separate and apart from her husband.   Nothing especial seems to have occurred for some time prior to her departure causing her to leave.   When her husband learned of her departure, he called upon her at her father's house, and requested her to return to her home. She refused so to do, and threatened him with personal violence if he did not at once leave the house.   Mrs. Trafford remained at her father's house for some time with the children, and then opened a boarding-house in Lockport, which business she has since carried on.   While I believe Mrs. Trafford to be a respectable woman, the evidence leads me to the conclusion that her boarders are not of a class calculated to create a very healthy moral atmosphere at her home.   Mrs. Trafford, shortly after she left her home, sent Lucy to the home of her grandfather Trafford, where she remained for three or four months, and until last spring, she retaining the custody of the other child.   This daughter was taken sick last spring, and died, and Mrs. Trafford called at her husband's house, and requested that Lucy be allowed to go to her house to see her dead sister.   This request was refused by the father, partly on account of indignant feelings on his part and that of the grandparents, arising out of the fact that the mother had caused the child to be treated during her sickness by a Christian scientist, instead of a regular physician.  Mrs. Trafford, after her request was refused, went to the house where Lucy was, in company with her brothers and several of her boarders, and with their assistance forcibly took the child from the relator, and took her to her house; and these proceedings were then instituted.   The respondent is a believer, it seems, in that system of treating the sick known as "Christian Science" which, as I understand, consists, in the main, in prayer for the restoration of the sick.   The deceased child was taken with spasms which continued some 24 hours, and until she died.   The respondent called a Christian scientist to treat her, who, the evidence shows, sat by the child some 8 hours, while she was suffering constantly with spasms.   No remedies were administered by her, unless silent prayer may be said to be a remedy.   After the child had been in spasms some 8 hours, its grandparents Trafford, learning of its sickness, remonstrated with the respondent as to the manner in which she had been treated, and at their request a physician was called.   His remedies failing to help the child, he informed the friends that the patient, he thought, would die, and the mother thereupon, against its grandparent's objections, again called the Christian scientist; but the child died before she arrived.

These facts are stated because they have had some influence upon my mind in deciding this question.   Should I award the custody of Lucy to her mother, she would, if sick, probably be treated as her sister was.   While I would not discredit or doubt the soothing, and hence, perhaps, beneficial, influence of prayer upon the mind and feelings of an adult invalid, with the light given me, I think it unwise to make a person, entertaining such views of treating the sick, the custodian of a child so young as Lucy is.   Neither Mrs. Trafford nor her parents or relatives have any means, except such as are obtained by daily labor.   Her father is a musician, and spends a portion of his time playing in saloons.   Mr. Trafford, Lucy's grandfather, is an old resident of Lockport, a man of excellent character.   He has for many years carried on, and is still carrying on, a prosperous grocery business, and has accumulated a comfortable competency.   He testifies that he is worth about $10,000.   His wife seems to be a kind and affectionate lady.   The relator is his only child, and Lucy is his only grandchild.   Mr. and Mrs. Trafford, Sr., have a strong love for Lucy, and are anxious and willing to give her a home with them, and care for and bring her up.   They have a pleasant and comfortable home, with pleasant surroundings in Lockport.   Should Lucy become a member of their family, their love and affection for her would be likely to increase.   They have ample means to give her every educational advantage, and it is altogether probable, should she remain with them, she would inherit their property. Should Lucy remain with her mother during her minority, she would be likely to participate in the vindictive feelings her mother entertains for her father and his parents, and an estrangement and hatred of her grandparents would be likely to be the result.   In view of all the circumstances, I am satisfied that Lucy's interests will be best promoted by awarding her custody to Mr. and Mrs. Henry Trafford, her grandparents.   Let an order be entered to that effect.